UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CODY LEE WALTON, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:11CV48 JCH |
| ) | |
| ROBERT DAWSON, et al., ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Robert Dawson and David Moore's (collectively "Defendants") Motion for Summary Judgment, filed August 25, 2012. (ECF No. 74). The motion is fully briefed and ready for disposition.

## **BACKGROUND**

On February 28, 2010, Plaintiff Cody Lee Walton ("Walton") stole a gun, a truck, and cash in Macon County, Missouri, and drove to the state of Indiana. (Defendants' Statement of Uncontroverted Facts in Support of their Motion for Summary Judgment ("Defendants' Facts"), ¶ 133). The next day, Walton was arrested and placed in jail in Indiana, after he wrecked the stolen truck. (Id., ¶ 1). Walton eventually was charged and pled guilty to carrying a firearm without a permit, a class A misdemeanor. (Id., ¶¶ 2, 3). Following Walton's release from the LaPorte County Jail in Indiana, he was extradited back to the state of Missouri, and transferred to the Macon County Jail.[1] (Id., ¶ 4).

From the time he arrived at the Macon County Jail on August 25, 2010, until the date of the

---

[1] Walton was held in the Macon County Jail on three class C felony charges, and for a suspected probation violation. (Defendants' Facts, ¶¶32, 34, and Plaintiff's answers thereto).

incident, Walton was housed in the jail cell next to Defendant Nathaniel Flennory ("Flennory").[2] (Defendants' Facts, ¶¶ 6, 76). At that time, Flennory had been at the Macon County Jail since September 25, 2009. (Id., ¶ 103).[3] On May 31, 2010, inmate Adam Scott ("Scott") alleged that he was assaulted by Flennory. (Id., ¶ 104). Specifically, Scott alleged Flennory, "put his head in his crotch and nibbled his penis over his clothes and that Mr. Flennory stuck his hand down the back of Mr. Scott's pants." (Id.). The parties dispute whether Scott was injured during this alleged assault, and whether Defendants were aware of any alleged physical injury. (Id., ¶¶ 104, 105). As a result of this incident Flennory was placed in segregation, where he remained until he attempted suicide on June 4, 2010. (Id., ¶¶ 107, 108). At that time, he was transferred to the Biggs Psychiatric Center. (Id., ¶ 108). Flennory returned to the Macon County Jail on June 22, 2010, and again was placed in segregation. (Id., ¶ 109). Flennory remained in segregation until he again exhibited suicidal tendencies in late July or early August, 2010, at which time Defendant Sheriff Robert Dawson ("Dawson") placed him in general population for his own safety and well-being. (Id., ¶ 109, 110). Dawson warned Flennory that future infractions would result in a return to segregation, and Flennory indicated that he understood and would behave. (Id., ¶¶ 111, 112).

During the time that Walton and Flennory were housed in the same pod, they would occasionally sit on the bunk within one of their respective cells and play cards together. (Defendants' Facts, ¶¶ 8, 9). The day before the incident at issue, Flennory gave Walton a note regarding Walton

---

[2] On August 26, 2010, Flennory pled guilty to one count of forcible rape, and was sentenced to fifteen years imprisonment. (See Defendant Flennory's Sentence and Judgment, attached to Plaintiff's Response to Defendants' Motion for Summary Judgment). Flennory thus was awaiting transfer to the Missouri Department of Corrections at the time of the incident. (Walton's Federal Complaint ("Complaint" or "Compl."), ¶ 19).

[3] Defendant Flennory had been held at the Macon County Jail numerous times prior to the incident involving Plaintiff. (Defendants' Facts, ¶¶ 102, 103).

receiving a blowjob from Flennory. (Id., ¶ 22). Walton did not tell anyone at the Macon County Jail about the note, nor did he ask to be moved at that time. (Id., ¶¶ 24, 29). Instead Walton simply flushed the note down the toilet, as he did not take its contents seriously. (Id., ¶¶ 23, 30).

During the early morning hours of August 30, 2010, Walton and Flennory played cards twice, first in Walton's cell, and later in Flennory's cell. (Defendants' Facts, ¶¶ 11, 12). Walton returned to his own cell after the second card game. (Id., ¶ 12). Shortly before 4:00 a.m. on August 30, 2010, Flennory entered Walton's cell and stuck his hand down Walton's pants, briefly fondling his penis. (Id., ¶ 13). Walton then followed Flennory back to his cell, where Flennory pulled down Walton's pants.[4] (Id., ¶¶ 14, 15). The men were interrupted, however, by the arrival of jailer Ryszard Bilinski ("Bilinski") for cell checks. (Id., ¶¶ 15, 16, 38).[5] Although Walton "strongly suspected" Flennory was going to have anal sex with him at the time of the walk-through, he did not say anything to the jailer about the possible sexual assault or Flennory's conduct. (Id., ¶¶ 17, 18). The same jailer performed another walk-through after the alleged assault, and again Walton remained quiet. (Id., ¶¶ 19, 20).[6]

At approximately 6:20 a.m. on August 30, 2010, an officer came to Walton's cell to serve him breakfast. (Defendants' Facts, ¶ 21). At that time, Walton handed the officer a note, stating that he had been raped. (Id.). Walton was removed from his cell within minutes, and taken to Samaritan Hospital for treatment. (Id., ¶¶ 26, 27). He then spent the night of August 30 in the Randolph

---

[4] Walton maintains he followed Flennory back to his cell out of fear. (Plaintiff's Response to Defendants' Purported Uncontroverted Material Facts ("Walton's Facts"), ¶ 14).

[5] Walton had his pants on by the time Bilinski arrived, and Bilinski was unaware of any other assaults or attempted assaults by Flennory on other inmates prior to the incident involving Walton. (Defendants' Facts, ¶¶ 16, 48).

[6] Walton maintains he remained quiet at that time because Flennory was still in the cell with him. (Walton's Facts, ¶ 20).

- 3 -

County Jail, before being returned to the Macon County Jail on August 31, where he was provided counseling services. (Id. ¶¶ 28, 31). Walton was released from the Macon County Jail two to three weeks after the incident involving Flennory. (Id., ¶ 142).

At the time of the incident, Defendants held the following positions: Robert Dawson, Sheriff of Macon County; and David Moore ("Moore"), Jail Administrator. (Defendants' Facts, ¶¶ 81, 55). Neither Dawson nor Moore was present at the Macon County Jail at the time of the incident involving Walton and Flennory, nor were they involved in the decision where to place Walton within the jail. (Id., ¶¶ 56, 57[7], 95, 121). Following the incident, Dawson issued a written reprimand to Bilinski, due to Bilinski's failure to lock down the inmates. (Id., ¶ 96).

Walton filed his Complaint in this matter on July 5, 2011, pursuant to 42 U.S.C. § 1983 and Missouri law. (ECF No. 1). Named as Defendants were Dawson, Macon County Sheriff; Moore, Macon County Jail Administrator[8]; Unknown Macon County Deputy Sheriff[9]; Alan Wyatt, Macon County Presiding Commissioner; Drew Belt and Jon Dwiggins, Macon County Commissioners[10]; and Flennory. In Count I, Walton claims his constitutional rights were violated by all Defendants except Flennory. Walton seeks both injunctive relief, and actual and punitive damages. In Count II, Walton lodges a claim for assault against Flennory. As noted above, Defendants filed the instant Motion for Summary Judgment on August 25, 2012, asserting there exist no genuine issues of material fact, and

---

[7] Walton denies Defendants' assertion that Moore was not involved in the decision where to place him within the jail. (Walton's Facts, ¶ 57). He does not support his denial with a specific citation to the record, however, and so the fact is deemed admitted. See Cotton v. AT&T Operations, Inc., 2007 WL 2259318, at *2 (E.D. Mo. Aug. 2, 2007).

[8] Both Dawson and Moore are sued in their official and individual capacities.

[9] Walton was granted leave to dismiss Unknown Macon County Deputy Sheriff without prejudice on August 8, 2011. (ECF Nos. 15, 17).

[10] Walton was granted leave to dismiss the three Macon County Commissioners on August 27, 2012. (ECF Nos. 72, 77).

they are entitled to judgment as a matter of law on Count I of Walton's Complaint.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for Summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude Summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for Summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Qualified Immunity

Under Eighth Circuit law, "[q]ualified immunity protects government officials performing

discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates." Id. (citation omitted); see also Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998) (internal quotation marks and citations omitted) ("Because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society, prison officials have a duty to protect inmates from violence at the hands of other inmates."). "A prison official violates this right when he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." Curry, 226 F.3d at 977 (internal quotation marks and citation omitted).

Under Eighth Circuit law, it is well settled that the doctrine of respondeat superior is inapplicable to § 1983 claims. Vaughn v. Greene County, Ark., 438 F.3d 845, 851 (8th Cir. 2006). Thus, for Walton to succeed on his § 1983 claim, he must demonstrate either that Defendants directly participated in the violation of his constitutional rights, or that their failure to train or supervise the offending actor caused the violation. Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir.) (citation omitted), cert. denied, 552 U.S. 826 (2007).

A. **Failure To Protect**

As stated above, in his Complaint Walton alleges failure to protect, in violation of the Eighth and Fourteenth Amendments.[11] (Compl., ¶¶ 23-24). An Eighth Amendment claim for failure to

---

[11] Because Walton was a pretrial detainee at the time of the alleged assault, his § 1983 claim is analyzed under the Fourteenth Amendment, rather than the Eighth Amendment. Kahle, 477 F.3d at 550. "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." Id. (citation omitted).

protect is comprised of two elements: first, that the inmate was incarcerated under conditions posing a substantial risk of serious harm, and second, that the defendant prison officials recklessly disregarded that risk. Riley v. Olk-Long, 282 F.3d 592, 595 (8th Cir. 2002). In the instant case, the Court readily finds, "that the [alleged] sexual act at issue here is 'sufficiently serious to amount to a deprivation of constitutional dimension.'" Id. (quoting Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996)). The Court thus turns to a discussion of whether Defendants were deliberately indifferent to that risk.

> The deliberate-indifference standard is a subjective one: The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The official need not believe that serious harm will actually befall an inmate; it is sufficient that the official knows of a substantial risk that the inmate will suffer serious harm.

Kahle, 477 F.3d at 550 (internal quotation marks and citations omitted).

Upon consideration, the Court finds Walton fails to set forth sufficient facts indicating Defendants were directly involved in, or personally responsible for, the alleged failure to protect. As noted above, it is undisputed that Defendants were not involved in the decision to place Walton near Flennory, nor were they present at the Macon County Jail at the time of the incident.[12] Furthermore, while Walton apparently seeks to hold Defendants liable for allowing Flennory back into the general population, the fact remains that Dawson immediately placed him in segregation after the initial assault on inmate Scott. Dawson only released Flennory to the general population after Flennory began exhibiting suicidal tendencies in segregation, and after warning him of the consequences for future misbehavior. "[P]rison officials are not required to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence." Curry, 226 F.3d at 978. "The

---

[12] Dawson and Moore thus cannot be personally liable for violating the alleged oral policy of locking the cells at night.

same is true for inmates who engage in violence while in prison," and the Court, "must give substantial deference to prison officials to determine the best methods for dealing with dangerous inmates in the volatile environment that is prison life." Norman v. Schuetzle, 585 F.3d 1097, 1105 (8th Cir. 2009) (citations omitted). The Court thus concludes Defendants are entitled to summary judgment with respect to Walton's underlying failure to protect claim.

### B. Failure To Train

#### 1. Individual Capacity

In his Complaint, Walton further claims Defendants are liable for their failure to train and/or supervise on issues such as securing jail cells overnight, and segregating pre-trial detainees from post-sentenced prisoners. (Compl., ¶ 25).[13] While as stated above Defendants cannot be held liable for Bilinski's alleged failures based on a theory of respondeat superior, they may be liable under § 1983 if they "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) [were] deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Walton]." Livers v. Schenck, --- F.3d ---, 2012 WL 5439300, at *12 (8th Cir. Nov. 8, 2012) (internal quotation marks and citations omitted). "In order to show deliberate indifference or tacit authorization, [Walton] must allege and ultimately prove [Defendants] had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Id. (internal quotation marks and citation omitted).

Walton does not dispute that newly hired jailers for the Macon County Jail receive at least 36 hours of on-the-job training, requiring them to shadow an experienced jailer, prior to working on their

---

[13] In his response to Defendants' motion, Walton further alleges Defendants failed to ensure their subordinates complied with a provision of the Macon County Jail Manual requiring that suicidal inmates released into the general population be subject to surveillance at least every fifteen minutes. (Plaintiff's Statement of Uncontroverted Material Facts, ¶ 6).

own. (Defendants' Facts, ¶¶ 58, 59). Moore personally trained Bilinski, and Defendants maintain Moore instructed him regarding the jail's "oral policy" that cells were to be locked down at night. (Id., ¶¶ 62, 63). Moore acknowledges that on one occasion, however, within a month after Bilinski started working as a jailer, he discovered upon relieving Bilinski after his night shift that the cells were not locked. (Id., ¶ 66). According to Moore, he reprimanded Bilinski for the failure, and was reassured Bilinski would comply with the oral policy in the future. (Id.). Defendants thus maintain that prior to the incident between Walton and Flennory, they had no knowledge the jail cells were not being locked down at night. (Id., ¶¶ 79, 64).

Walton provides several pieces of evidence to refute Defendants' claim. First, he presents an affidavit from Scott, in which he testifies in relevant part as follows:

> 11. I would often wake up in the very late evening or early morning hours. The Individual jail cells within the pods were never locked during my stay there, except after I reported that Nathan Flennory had bite [sic] my penis on May 30, 2010....
>
> 14. I've been told that it was the oral policy for the Macon County Jail for individual jail cells with the jail pods to be locked from 11:00 P.M. to around 6:00 A.M. At the Macon County Jail. During my multi-month detention at the Macon County Jail I never observed this policy complied with and only the jail pod outer doors were locked. I was usually awake and aware of the jail cell doors during a significant portion of this multi-hour period during my incarceration in Macon County.

(ECF No. 84-2, PP. 3-5). Second, Walton includes as an exhibit to his response a reprimand issued by Dawson to Moore, stating as follows:

> Due to the unfortunate incident (sexual assault) which occurred in the jail during the early morning hours of 08-30-10, I feel it is imperative I take the following disciplinary action.
>
> As the Jail Administrator it is part of your duties to follow the policies of the jail and insure the jailers working under you do the same. As you know on 08-30-10 the inmates were not locked down in their cells at 2300 hr., as the policy dictates. This has been part of the jail SOP for the past 18+ years and has not changed. I learned from talking to you after the above mentioned incident, some of the jailers

have not been adhering to this policy on a regular basis. Had this policy been followed it may have prevented this very serious incident.

As a disciplinary action, for you not enforcing said policy, I am placing you on probation for the next 90 days. I am further directing you, during the next 30 days, to carefully review our jail policies and report to me any changes or upgrades needed. As soon as the policies are upgraded, you and I will have a meeting with all jail staff to educate them to the current policies and impress upon them the importance of following all policies. When policies are not followed, people can and do get hurt.

(ECF No. 84-5).

Upon consideration, the Court finds Walton's submissions sufficient to survive summary judgment. In other words, the Court finds questions of fact remain with respect to whether Defendants had notice of their subordinates' pattern of failing to lock the cell doors at night, and either were deliberately indifferent to or tacitly authorized the failure. Furthermore, the Court notes the resultant injury to Walton was extremely similar to the previous injury to Scott, and purportedly occasioned by the same alleged failure. See Livers, 2012 WL 5439300, at *13 (citation omitted) ("To impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability."). Under these circumstances, Defendants' Motion for Summary Judgment with respect to Walton's claim of failure to train and/or supervise against them in their individual capacities must be denied.[14]

### 2. **Official Capacity**

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010) (internal quotation marks and citations omitted). Thus, to state a claim against Defendants in their official capacities,

---

[14] While the Court recognizes Walton's claim against Moore is stronger than that against Dawson, it nevertheless finds fact questions remain with respect to whether Dawson responded reasonably after the Scott incident.

Walton must show that the County itself caused the constitutional violation at issue. Id.

> In general, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a respondeat superior theory of liability. *Monnell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, a local government may be subject to § 1983 liability for "inadequate training of its employees." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), "where (1) the [county's]....training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the county]'; and (3) an alleged deficiency in the ....training procedures actually caused the plaintiff's injury." *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197).

Id. To satisfy this standard, Walton must "demonstrate that the county had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Martinez v. Garcia, 2011 WL 41895, at *2 (D. Neb. Jan. 6, 2011) (internal quotation marks and citation omitted).

Upon consideration, the Court finds the above-cited evidence suffices to present a fact question with respect to official capacity liability as well. In other words, Walton presents evidence that Macon County had inadequate procedures related to supervision and training, that it was deliberately indifferent to the rights of others in adopting such procedures, and that the deficiency in those procedures actually caused injury to Walton. Martinez, 2011 WL 41895, at *2. Defendants' Motion for Summary Judgment with respect to Walton's claim of failure to train and/or supervise against them in their official capacities will therefore be denied as well.

## II. Conspiracy Claim And Injunctive Relief

With their motion Defendants also seek summary judgment on Walton's conspiracy claim, and his request for injunctive relief. (Defendants' Memorandum in Support of their Motion for Summary Judgment, PP. 25-29). Walton did not respond to this portion of Defendants' motion, and the Court will grant Defendants' request for the reasons set forth in their motion.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Sheriff Robert Dawson and David Moore's Motion for Summary Judgment (ECF No. 74) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Exhibit #1 of his Response to Defendants' Motion for Summary Judgment (ECF No. 87) is **DENIED** as moot.

Dated this 11th day of December, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE