## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| CODY L. WALTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 2:11-CV-00048 |
| | ) | |
| ROBERT DAWSON, et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S TRIAL BRIEF

COMES NOW Plaintiff Cody L. Walton, by and through his undersigned counsel, and for his trial brief, states as follows:

I. Legal Issues

A. Liability of Defendants

The issues in this case as it relates to Defendants are whether Bilinski failed to protect Walton, which gives rise to Defendants' liability for failing to supervise and train Bilinski, showing deliberate indifference to Walton's constitutional rights.

A pretrial detainee's failure to train claim against jail officials rests on the Due Process Clause of the Fourteenth Amendment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)[1]. The Fourteenth Amendment gives state pretrial detainees rights which are "at least as great as the Eighth Amendment protections available to a convicted prisoner." Id. In fact, the Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that "[d]ue process requires that a pretrial

---

[1] All cases cited in Legal Issues subpart A, Liability of Defendants, are cases cited within the Eighth Circuit opinion Walton v. Dawson, et al, No. 12-4000, filed on May 20, 2014.

detainee not be punished." Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). A pretrial detainee who has not been arraigned, much less convicted, is shielded not only from "cruel and unusual punishments," but from any punishment whatsoever. Revere, 463 U.S. at 244; Bell, 441 U.S. at 535 n.16.

To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee plaintiff must show the defendant official was deliberately indifferent to his rights. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). As applied to a prison official in the Eighth Amendment context, "deliberate indifference" requires subjective knowledge: no liability attaches "unless the official knows of and disregards an excessive risk to inmate health and safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). It is well-established that the Eighth Circuit uses Farmer's subjective measure of deliberate indifference to evaluate Fourteenth Amendment claims by pretrial detainees against prison officials. Holden v. Hirner, 663 F.3d 336, 341 & n.3 (8th Cir. 2011), Vaughn v. Greene Cnty., Ark., 438 F.3d 845, 850 (8th Cir. 2006). Thus, a pretrial detainee's failure to supervise and train claims must be judged by Farmer's subjective indifference standard: plaintiff must show the defendant official personally knew of the constitutional risk posed by inadequate training or supervision, which proximately caused him injury by the official's failure to take sufficient remedial action. Farmer, 511 U.S. at 837-39.

It is beyond dispute that "[r]ape or sexual assault at the hands of other prisoners is...'sufficiently serious to amount to a deprivation of constitutional dimension.'" Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998) (quoting Jensen v. Clarke, 94 F.3d 1191,

1197 (8th Cir. 1996)). "A prison official may be held liable under the Eighth Amendment if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir 1997). This knowledge does not need to be particularized – defendant does not need to know plaintiff "was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Farmer, 511 U.S. at 843. Defendant only needed to know (1) the jail cells were not being locked at night, and (2) leaving the cells unlocked overnight was "an obvious, substantial risk to inmate safety." Id. Farmer's subjective standard does not invite prison supervisors to bury their heads in the sand. Id (explaining "a prison official…would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist"). A reasonable jury could find the risk was so obvious that the defendant official knew about the risk. Id at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Detainees are most vulnerable when asleep, and the Constitution guarantees a minimum right to sleep without legitimate fear of a nighttime assault by another detainee. Hutto v. Finney, 437 U.S. 678, 681-82 & n.3 (1978); Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999). Whether unlocked cell doors pose an unconstitutional risk to detainees, such that "potential victims dare not sleep" or risk attack if they do, is always a factual question dependent on the totality of the specific prison's circumstances and the prison officials' awareness of the risk. Hutto, 437 U.S. at 682 n.3. Prison officials retain

wide latitude to determine how best protect detainees from the risk of a nighttime assault. What officials cannot do, without creating an unconstitutional safety risk, is nothing to assure detainees "safe conditions" of confinement. Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982); Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998) ("[P]rison officials have a duty to protect inmates from violence at the hands of other inmates." (citing Farmer, 511 U.S. at 833-34)).

Violating an internal policy does not *ipso facto* violate the Constitution, but when that policy equates to the constitutional minimum under the totality of the circumstances, the court appropriately focuses on the objectively unconstitutional conduct which breaches the policy. Falls v. Nesbitt, 966 F.2d, 375, 380 (8th Cir. 1992). Prison officials are not at liberty to violate the Constitution merely because doing so also happens to violate a prison policy. Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (explaining liability attaches for the violation of a "constitutional right," regardless of any violation of "prison policy").

A finding of failure to protect is required before findings of failure to train and failure to supervise can be made. Unless a prison official's subordinate violated the Constitution, the official cannot be liable for failure to train. Carpenter v. Gage, 686 F.3d 644, 651 (8th Cir. 2012). However, the subordinate does not have to be joined as a defendant; plaintiff bears the burden of convincing a jury that the subordinate committed the underlying failure to protect violation before the jury may impose any liability against the prison official. A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or

otherwise act to end the assault. Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994). A correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the rights of the victim inmate. Odom v. S.C. Dep't of Corr., 349 F.3d 765, 773 (4th Cir. 2003).

Plaintiff anticipates there will be legal issues with Defendants' attempts to prohibit statements given by Bilinski and evidence that Bilinski violated Plaintiff's constitutional rights. Plaintiff maintains the evidence will show during the time the rape occurred, Bilinski observed both Walton and Flennory in Flennory's cell and observed Walton looked "very concerned." Instead of inquiring as to what was going or taking action to separate Walton and Flennory, given the requirement that inmates were to be in their own cells at that time of night, Bilinski did nothing at all, allowing Flennory to continue and complete his rape of Walton. Plaintiff also maintains the evidence will show Defendant Moore, who personally worked in the jail and was aware of the assault Flennory committed against Adam Scott three months prior, was also aware that Bilinski failed to lock the cells at night. Moore also failed to determine whether Bilinski had stopped ignoring the policy on locking cells at night, allowing Bilinski to continue putting inmates at an obvious risk of being assaulted during the times he was responsible for their protection and safety. Defendant Dawson's reprimand of Bilinski and Moore confirms that Moore knew jailers were ignoring the locked cell policy and only reacted to it after Walton was raped.

    B.    Ability of Adam Scott to Testify

The issue in this case as it relates to witness Adam Scott is whether a witness declared incapacitated by a court of law may be permitted to testify.

Rule 601 of the Federal Rules of Evidence states that every person is competent to be a witness unless the rules provide otherwise. Fed. R. Ev. 601 (2013). The Advisory Committee Notes elaborate further, stating that "[s]tandards of mental capacity have proved elusive in actual application," "[d]iscretion is regularly exercised in favor of allowing the testimony," and "[a] witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence." Fed. R. Ev. 601 (2013). Rule 602 of the Federal Rules of Evidence states that a witness may testify if the witness has personal knowledge of the matter. Fed. R. Ev. 602 (2013). The Advisory Committee Notes state "…personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." Fed. R. Ev. 602 (2013).

Case law supports the proposition that competency of witness testimony is an issue particularly suited for the jury and that cross-examination enables the fact finder to determine a witness's credibility and accuracy. An admitted drug addict and felon who suffered from hallucinations, whose testimony seemed confused at times and differed between direct examination and cross-examination was not incompetent to testify under Rule 601. United States v. Blankenship, 923 F.2d 1110, 1116 (5th Cir. 1991). Flaws in testimony may impair credibility, but they do not affect competency under Rule 601. Id at 1117. A person who is insane may also be competent to testify under Rule 601. United States v. Lightly, 677 F.2d 1027, 1028 (4th Cir. 1982). A lack of independent recollection

does not violate Rule 602 because it excludes testimony concerning matters the witness did not observe or had no opportunity to observe. United States v. Lyon, 567 F.2d 777, 783-784 (8th Cir. 1977).

Plaintiff anticipates there will be legal issues with Defendants' attempts to prohibit testimony by Adam Scott, the inmate Flennory sexually assaulted three months before he raped Walton. Plaintiff maintains the rules of evidence and case law support the proposition that Adam Scott's testimony, on both direct and cross-examination, is properly suited for a jury to evaluate and determine its weight and credibility. Furthermore, the jury is properly suited to consider the effect of any incapacity or incompetency on Scott's powers of observation, recollection and communication.

II. Factual Issues

The factual issues in this case center on policies at the Macon County jail regarding locking cell doors at night and disregard of those policies. Plaintiff will maintain that the Macon County jail disregarded its policies (thus demonstrating deliberate indifference), despite officials' knowledge that they housed a registered sex offender who sexually assaulted another inmate not long before the rape giving rise to this case. Plaintiff contends the facts establish that Moore was aware that Bilinski left cell doors unlocked at night and that Moore never questioned Bilinski's failure to lock cell doors during the time both Walton and Adam Scott were attacked by Flennory. Defendants contend Moore and Dawson were unaware that cell doors were left unlocked by jailers at night.

III. Substantive and Procedural Issues

Plaintiff anticipates substantive and procedural issues and have filed a motion in limine contemporaneously with this trial brief. The motion in limine seeks to prohibit Defendants from: (1) raising the issue of whether the rape giving rise to this case was a consensual act as the issue is precluded by Flannery's already-entered plea of guilty to raping Walton; (2) eliciting testimony regarding Plaintiff's sexual history, as that would be improper propensity or character evidence; and (3) admitting affidavits or other statements by named defendants in this case as impermissible self-serving hearsay.

Respectfully submitted,

/s/ Jeremy D. Hollingshead
Jeremy D. Hollingshead   #60447MO
7911 Forsyth Boulevard, Suite 300
Saint Louis, Missouri  63105
Telephone:   (314) 480-5474
Facsimile:    (314) 594-0825
Email:         j.hollingshead@hpelaw.com

/s/ John M. Eccher
John M. Eccher   #62869MO
7911 Forsyth Boulevard, Suite 300
Saint Louis, Missouri  63105
Telephone:   (314) 480-5474
Facsimile:    (314) 594-0825
Email:         j.eccher@hpelaw.com

/s/ Stephen Wyse
Stephen Wyse     #49717MO
609 East Broadway
Columbia, Missouri  65203
Telephone:   (573) 449-7755
Facsimile:    (573) 449-7557

ATTORNEYS FOR PLAINTIFF

## Certificate of Service

       The undersigned counsel hereby certifies that a true and accurate copy of the foregoing was sent to all counsel of record this the 14th day of September, 2014 via the Court's Electronic Filing System.

                                      /s/ Jeremy D. Hollingshead