IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

CODY L. WALTON,                        )
             Plaintiff,         )
                        )
vs.                                    )    Case No:  2:11-CV-00048
                        )
ROBERT DAWSON, et al.,                 )
                        )
            Defendants.    )

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES & COSTS PURSUANT TO 42 U.S.C. § 1988 AS THE PREVAILING PARTY FOR CLAIMS PURSUED UNDER 42 U.S.C. § 1983 AND/OR IN THE ALTERNATIVE MOTION TO AMEND THE JUDGMENT TO ADD COSTS AND ATTORNEYS FEES**

COMES NOW Plaintiff, pursuant to Rule 54(d), 8th Cir. R. 47C, and 42 U.S.C. §§ 1988 and 1983, and hereby moves this Honorable Court for an award of Attorneys' Fees and Costs in the above-captioned matter.

## I.    FACTUAL BACKGROUND

Plaintiff Cody Walton filed his lawsuit against Defendants David Moore (in his official capacity as the Macon County jail administrator), Sheriff Robert Dawson, and others for violating his Constitutional rights by failing to properly train and/or supervise his jailers.  Defendants filed a Motion for Summary Judgment as to all claims, which this Court subsequently denied with respect to Defendants Dawson and Moore.  Thereafter, Defendants filed an interlocutory appeal with the Eighth Circuit Court of Appeals appealing this Court's denial of summary judgment.  The Eighth Circuit Court of Appeals affirmed this Court's ruling with respect to Defendant Moore, and the case was called for

trial on October 7, 2014, in Hannibal, Missouri.  After two and a half days of trial, the

jury returned a verdict in favor of Plaintiff and against Defendant Moore (in his official

capacity as the Macon County jail administrator) in the amount of $60,000.00.

Because Plaintiff succeeded at trial with regard to his constitutional claims brought

pursuant to 42 U.S.C. § 1983, he does now, by and through his attorneys, move for

attorneys' fees and costs, as authorized to the "prevailing party" under 42 U.S.C. § 1988.

Plaintiff now requests, pursuant to 8th Cir. R. 47C and/or 42 U.S.C. § 1988, an award of

the costs and attorneys' fees incurred in obtaining this result.

## II.    AVAILABILITY OF ATTORNEYS' FEES

Federal law provides for an award of attorneys' fees for deprivation of

constitutional rights by state actors.[1]  The United States Supreme Court and the Eighth

Circuit Court of Appeals have articulated the important public policy underlying the fee-

shifting provisions in successful § 1983 litigation as follows:

> The primary purpose of [the fee-shifting provision] is to promote diffuse
> private enforcement of civil rights laws by allowing the citizenry to monitor
> rights violations at their source, while imposing the cost of rights violations
> on the violators. [S.Rep. No. 1011, 94th Cong., 2d Session 5 (1976),
> reprinted in 1976 U.S. Code Cong. & Admin. News 5908]. A plaintiff
> bringing a civil rights action "does so not for himself alone but also as a
> 'private attorney general,' vindicating a policy that Congress considered of
> the highest priority.  If successful plaintiffs were routinely forced to bear
> their own attorneys' fees, few aggrieved parties would be in a position to
> advance the public interest. . . .[2]
>
> In order for such a policy to be effective, Congress felt it appropriate to
> shift the true *full cost of enforcement* to the guilty parties to eliminate any

---

[1] *See* 42 U.S.C. §1988.

[2] *Newman v. Piggy Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).

obstacle to enforcement. "It is intended that the amount of fees awarded under [the fee-shifting provision] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as anti-trust cases…[3]

The availability of attorneys' fees to successful civil rights litigants serves two equally significant purposes. First, the availability of fees ensures effective access to the judicial process by litigants with meritorious claims.[4] Second, civil rights litigation serves an important public purpose. Civil rights litigation protects and clarifies important constitutional rights.[5]

The United States Supreme Court held, "*a prevailing plaintiff "should ordinarily recover an attorney's fee unless* **special circumstances** *would render such an award unjust.*"[6] The Ninth Circuit, in *Darby v. City of Torrance*, cited *Hensley* and added, "*Our circuit has stated that the denial of attorney's fees in the absence of such special circumstances would be an abuse of discretion.*"[7] The entire community, as well as Plaintiff, benefit from the success in this case.[8] Thus, the litigation has a public value that

---

[3] S. Rep. No. 1011, 94th Cong., 2d Session 5 (1976, reprinted in 1976 U.S. Code Cong. & Admin. News 5908).

[4] *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Casey v. City of Cabool*, 12 F.3d at 805.
[5] *Milton v. Des Moines, Iowa*, 47 F.3d 944, 946 (8th Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) (citation omitted).

[6] *S. Rep. No. 94-1011, p.4 (1976) (quoting Newman v. Piggie Park enterprises, Inc., 390 U.S. 400, 402 (1968))*" *Hensley* at 429 (emphasis added).

[7] 46 F.3d 1140 (9th Cir. 1995) (unpublished opinion). *See also Herrington v. County of Sonoma*, 883 F.2d 739, 744, 745-46 (9th Cir. 1989) (holding further that defendants bear a "strong" burden of proof of special circumstances)."

[8] *See Casey v. City of Cabool*, 12 F.3d 799; *Bibbs v. Block*, 778 F.2d 1318, 1324 (8th Cir. 1985) (*en banc*).

transcends Plaintiff's immediate, personal success by protecting the general public from Constitutional violations.

### III.   ATTORNEYS' FEES

#### A.   Plaintiff is the "Prevailing Party"

According to the Eighth Circuit Court of Appeals in *Tyler v. Corner Construction Corporation, Inc.*, "The term 'prevailing party' is generously defined…and does not turn on the magnitude of the plaintiff's success…."[9]   In so ruling, the *Tyler* court noted that a plaintiff is a "prevailing party," even when a plaintiff is suing for $17 million and only obtains one dollar from one defendant.[10]   In the present case, the Plaintiff obtained a verdict against the only remaining Defendant in an amount of $60,000.00.  This amount represents two years gross salary for the average Macon County worker, which is a significant sum of money to Plaintiff.[11]  Thus, Plaintiff is the prevailing party.

#### B.   Lodestar Amount

The general principles governing the award of attorneys' fees are well settled. First, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates to determine the product or "lodestar" figure.[12] The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled."[13]

---

[9] 167 F.3d 1202, 1205 (8th Cir. 1999).

[10] *Id.*, citing *Farrar v. Hobby,* 506 U.S. 103, 112 (1992).

[11] See Exhibit 1 from the Missouri Economic Research and Information Center which is affiliated with the Missouri Department of Economic Development.

[12] *Hensley*, 461 U.S. at 433.

[13] *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564

To determine the lodestar amount, courts may consider:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the processional relationship with the client; and (12) awards in similar cases.[14]

In the present case, these factors weigh heavily in favor of Plaintiff's counsel.

### The Time and Labor Required

A significant amount of time was involved in the prosecution of this case due to the complexity of the case, as well as its procedural history (i.e. interlocutory appeal, two trial settings, and trial).  The amount of hours necessary to litigate a case of this nature is extensive and cannot be understated.

### The Novelty/Difficulty of the Questions and "Undesirability" of the Case

As to the novelty/difficult of the questions presented in this case, as the Court is well aware, there was no pattern Eighth Circuit verdict director for the causes of action in this case.  Moreover, outside of the Eighth Circuit's opinion in this case, there was no meaningful guidance regarding the drafting of such verdict director.  As a result, the legal issues were extraordinarily complicated and involved matters of first impression in this

---

(1986) (emphasis in original). *See also, Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Casey v. City of Cabool*, 12 F.3d at 805 (quoting *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) ("the lodestar award . . . is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar"); *Casey*, 12 F.3d at 805 (quoting *Hendrickson*).

[14] *Hensley*, 461 U.S. at 434.

Circuit.  Factually, the case was further complicated, because in a matter of first impression, the Eighth Circuit held that a subjective standard applied to these types of cases.  As a result, Plaintiff's attorneys were forced to present evidence regarding Defendant's actual knowledge of the substantial risk to Plaintiff.  In short, this case involved matters of first impression and involved issues so complex that the mere creation of a verdict director proved to be almost impossible.

As to the desirability of the case, given the accusations of male-on-male rape in the context of a county jail, this was not an easy case and many lawyers would have turned it down.[15]  Moreover, as in most civil rights cases, there was a very real risk of no judgment at all.

### The Skill Requisite to Perform the Legal Service Properly

In addition to navigating the complexities of novel legal issues, the attorneys in this case had to navigate the complexities of multiple defenses (i.e. consent and deliberate indifference), as well as numerous conflicting testimonies and forensic science.  Even without considering the unique complexities of this case, Section 1983 cases are difficult cases to prosecute and even more difficult cases to win.  The skill required to survive summary judgment and ultimately prevail at trial is significant.

### The Preclusion of Employment by the Attorney due to Acceptance of the Case

As submitted in the attorneys' affidavits, the amount of hours necessary to prosecute this case was significant.  Specifically as to Mr. Wyse, a solo practitioner, the hours represented a substantial percentage of his yearly practice.  As to Mr. Hollingshead

---

[15] *White v. McKinley, et al.*, 05-0203-CV-W-NKL (W.D.Mo. 2006).

and Mr. Eccher, both attorneys are routinely asked to co-counsel trials throughout the State of Missouri and risked rejecting numerous other opportunities as a result of agreeing to represent Plaintiff in this case.

### The Customary Fee

In setting a reasonable attorney's fee, the touchstone is whether the rate is in line with those prevailing in the relevant community for comparable services by lawyers of reasonably comparable skill, experience, and reputation.[16] Prevailing market rates are the proper basis for a fee award regardless of whether the prevailing party is represented by private or non-profit counsel.[17]  The "prevailing market rate method used in awarding fees … shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals."[18]  The hourly rate charged in complex civil rights litigation such as this should be "governed by the same standards which prevail in other types of equally complex federal litigation, such as antitrust cases, and should not be reduced because the rights involved may be non-pecuniary in nature."[19]  "The relevant

---

[16] *See*, *Blum v. Stenson*, 465 U.S. 886, 895 (1984). *See also, Moore v. City of Des Moines, Iowa*, 766 F.2d 343, 346 (8th Cir. 1988) (whether the hourly rate is "within the general rates charged for a particular service in the relevant community"); *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982) (in general, reasonable rate is "ordinary fee for similar work in the community").

[17] *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[18] *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (*en banc*).

[19] *Hensley*, 461 U.S. at 431 n.4, *quoting*, S.Rep. No. 94-1011 p. 6 (1976).

market for attorneys … may extend beyond the local geographic community."[20]

Plaintiff's attorneys seek the following hourly rates, based on the quality of representation and the complexity of the case:

| Attorney/Legal Assistant | Hourly Rate |
|---|---|
| Jeffrey Chapdelaine | $500.00 |
| Stephen S. Wyse | $450.00 |
| Derek M. Rudman | $450.00 |
| Jeremy D. Hollingshead | $400.00 |
| John M. Eccher | $400.00 |
| Legal Assistant Jessica Rials | $100.00 |
| Legal Assistant Melissa Brockgeitens | $100.00 |

Affidavits of Jeffrey Chapdelaine,[21] Stephen Wyse,[22] Derek M. Rudman,[23] Jeremy D. Hollingshead,[24] and John M. Eccher,[25] are included herewith.

The foregoing rates are reasonable and consistent with the rates of attorneys of comparable skill, reputation and experience performing work of comparable complexity in the St. Louis and Kansas City community and in complex litigation cases such as this. St. Louis and Kansas City are the appropriate geographic cities for comparison for a couple of reasons.  First, due to the complexities of this case, Plaintiff had to find

---

[20] *Casey v. City of Cabool*, 12 F.3d at 805. *See also*, *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (finding appropriate hourly rates were those prevailing rates in the Chicago market for legal services, rather than rates prevailing in South Dakota, where chosen counsel were particularly experienced in reproductive rights litigation).

[21] *See* Exhibit 8.

[22] *See* Exhibit 7.

[23] *See* Exhibit 12.

[24] *See* Exhibit 5.

[25] *See* Exhibit 6.

attorneys knowledgeable in this area of the law, not associated with Defendant City or Defendant Officers or their agents, employees, or representatives, and who were large enough, willing, and able to expend significant amounts of time for a sustained period without any promise of compensation other than what courts might award in the distant future. St. Louis and Kansas City are the two areas where firms meeting these criteria are generally available.  Second, attorneys Jeremy D. Hollingshead and John M. Eccher are based in St. Louis and, therefore, made the decision to represent Plaintiff and forego profitable alterative cases in the St. Louis area.

The rates submitted in Exhibits 5-8 and 12 are supported by both similar cases and external standards.  With regard to similar cases, in the 2006 Western District of Missouri case of *White v. McKinley*, Judge Laughrey found rates of both $400 and $470 per hour reasonable.[26]   In so ruling, the Court applied the *Laffey* Matrix from the Civil Division of the United States Attorney's Office for the District of Columbia.[27]  As of the most recent *Laffey* Matrix, the attorneys in this case are submitting an appropriate (even lower) rate than authorized by the Matrix.[28]  Moreover, the paralegal rate submitted in this case of $100.00 per hour is below the minimum rate of $105.00 per hour.

Even if this Court were disinclined to accept the *Laffey* Matrix as the standard for setting attorney rates, requested fees are fully supported by *Missouri Lawyers Weekly's*

---

[26] *White v. McKinley,* 05-0203-CV-W-NKL, (W.D. Mo. 2006) (*See* Exhibit 4).

[27] *See* Exhibit 2.

[28] *Id.*

June 17, 2013 survey, "Billing Rates 2013. (http://molawyersmedia.com
/2013/06/17/summary-billing-rates-2013),"[29] which found the average billing rate for a
partner in a Kansas City firm to be $483.00 per hour and the average rate for a partner in
at St. Louis firm to be $401.00 per hour.  Both are consistent with the rates submitted in
this case.

In addition to *White*, other cases in the Eighth Circuit and District Courts within
that Circuit justify the claimed hourly rates.[30]  In fact, courts have awarded much higher
rates in securities and similar types of actions which the Supreme Court has said are
comparable to complex civil rights litigation.[31]

## Whether the Fee is Fixed or Contingent

All of Plaintiff's attorneys were operating under a contingency fee arrangement
with Plaintiff.   Pursuant to Rule 54(d), upon the Court's request, a copy of said

---

[29] *See* Exhibit 3.

[30] *See*, *Republican Party of Minnesota v. White*, 456 F.3d 912, 920-921 (8th Cir. 2006)
(approving hourly rate of $425 in First Amendment 1983 action); *Fish v. St. Cloud State
Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (affirming rates in **2002** up to $350.00 per
hour,[30] based in part on survey information, in class action gender discrimination case).

[31] *See*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (in derivative and
securities litigation, court approved award of attorneys fees that exceeded $400 an hour
and which were then multiplied by 2.9 to reflect risk attorneys bore); *In re Bankamerica
Corp. Securities Litigation*, 228 F. Supp. 2d 1061, 1065-66 (E.D. Mo. 2002) (in securities
action court determined that plaintiffs' attorneys were entitled to 18% of settlement under
common fund doctrine, relying in part on the fact that plaintiffs' attorneys charged up to
$695 per hour and that common fund percentage would result in lodestar amount being
multiplied by 3.2); and *In re Xcel Energy, Inc., Securities, Derivative & ERISA Litigation*,
364 F. Supp. 2d 980, 989-91, 994, 1001 (D. Minn. 2005) (in class action securities,
derivative and ERISA action court determined that plaintiffs' attorneys were entitled to
25% of settlement under common fund doctrine, relying in part on fact that plaintiffs'
attorneys charged up to $585 per hour and that common fund percentage would result in
lodestar amounts being multiplied by .44).

agreements can be provided.  Because Plaintiff's attorneys were operating under a contingency fee agreement, they bore all risks associated with litigation, including time and expenses.  Thus, this factor weighs in favor of Plaintiff's attorneys.

### Time Limitations Imposed by the Client or the Circumstances

As the Court is aware, appellate practice involves significant time constraints, as well as significant risks associated with failing to satisfy said time constraints.  In the present case, attorney Stephen Wyse spent a significant amount of time dealing with Defendant's interlocutory appeal.  Such time was being devoted to a matter that was extremely time sensitive.  Moreover, upon receiving the Eighth Circuit's opinion in May of 2014, Mr. Wyse had a short period of time (less than six months) to determine the need for co-counsel, to locate co-counsel, and to prepare the case for trial in light of the Eighth Circuit's opinion.

### The Amount Involved and the Results Obtained

As discussed in detail above, Plaintiff's award of $60,000 was a significant award for the Plaintiff which represented over two times (when income tax is factored in) the annual salary of the average Macon County worker.   Additionally, although Plaintiff's attorneys' fees exceed the compensatory damages obtained, that is because "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."[32]

---

[32] *DeWalt v. Davidson Service/Air, Inc*., 398 S.W.3d 491, 507 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (plurality opinion)).

As stated above, fee-shifting statutes are designed to "…promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators."[33]  In order to achieve this goal, "Congress felt it appropriate to shift the true **full** cost of enforcement to the guilty parties to eliminate any obstacle to enforcement."[34]

### The Experience, Reputation, and Ability of the Attorneys

Mr. Wyse has extensive experience in handling civil rights cases having represented numerous Section 1983 clients throughout the State of Missouri.  Mr. Hollingshead and Mr. Eccher have a robust practice in St. Louis and Kansas City that represents over a hundred clients prosecuting civil rights claims (particularly under Title VII, the Fair Labor Standards Act, the Missouri Human Rights Act, and other civil rights laws).  Both Mr. Rudman and Mr. Chapdelaine have extensive experience in litigation. Moreover, Mr. Chapdelaine has extensive experience in psychology, specifically related to trauma and client preparation.  Mr. Hollingshead and Mr. Eccher also recently obtained a $7.5 million jury verdict in the City of St. Louis in a Missouri Human Rights Act claim (the verdict was statutorily reduced to approximately $3.1 million due to caps on punitive damages and is currently on appeal).  Moreover, the Court is well-positioned to determine the quality of representation in this case, having been present throughout the litigation, particularly the trial.

---

[33] *Newman,* 390 U.S. 400 (1968).

[34] S.Rep. No. 1011, 94th Cong., 2d Session 5 (1976, reprinted in 1976 U.S. Code Cong. & Admin. News 5908, *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (emphasis added).

**The Nature and Length of the Professional Relationship with the Client**

Mr. Wyse has been by Plaintiff's side since the inception of this case (i.e. since 2011).  Until Mr. Hollingshead and Mr. Eccher were associated into this case in May of 2014, Mr. Wyse was the only counsel working on behalf of Plaintiff.  Thus, his relationship is lengthy and nearly exclusive.

**C.     Computation of the Lodestar**

The lodestar is the product of the attorneys' hourly rates times the number of compensable hours expended on the matter.[35]  A reasonable fee can be set in this case consistent with established case law and local rates and practices by multiplying the number of compensable hours by plaintiffs' attorneys' hourly rates as set forth below:

**Fees Related to Work on Case**

| Attorney/Legal Assistant | Hours | X | Rate | = Total |
|---|---|---|---|---|
| Jeremy D. Hollingshead | 322.9 | | $400 | $129,160.00 |
| John M. Eccher | 159.5 | | $400 | $63,800.00 |
| Steven Wyse | 1,570.7 | | $450 | $707,510.00 |
| Jeffrey Chapdelaine | 20 | | $500 | $12,000.00 |
| Dertek M. Rudman | 9 | | $450 | $4,050.00 |
| Melissa Brockgreitens (Assistant) | 48 | | $100 | $4,800.00 |
| Jessica Rials (Assistant) | 25.8 | | $100 | $2,580.00 |
| **TOTAL** | | | | **$923,900.00** |

**D.     Number of Hours Expended**

Quoting from the Senate Report pertaining to 42 U.S.C. § 1988, the Supreme Court in *Hensley* noted:

In computing the fee, counsel for prevailing party should be paid as is

---

[35] *Hensley,* 433.

13

traditional with attorneys compensated by a fee-paying client, "for all time reasonably expended on a matter."[36]

Each hour of professional effort expended on Plaintiff's behalf and for which compensation is sought is identified in Plaintiff's Exhibits 5-8 and 12.  Plaintiff's Exhibits detail, in chronological order, the date the work was performed, the nature of the work performed, the time required to perform the work, and designates the attorney or paralegal performing the work. The method of preparing the time records is included in Plaintiff's attorneys' affidavits.

In general, these time records were compiled from calendar notations and direct entries made by the attorneys/paralegal in the ordinary course of business and completed contemporaneously with the work performed. The time entries for each of the attorneys are intelligible, in context, and relate meaningfully to the activities in this case.[37]

## E.    Costs Associated with Prosecuting the Case

A number of reasonable costs were incurred in prosecuting this case.  Those costs are detailed in Exhibits 9, 10, and 11.  Exhibit 9 reflects the expenses associated with Jeffrey Chapdelaine.  Mr. Chapelaine flew from Boston to St. Louis to work with Plaintiff. Accordingly, the expenses for his hotel (**$784.83**) and flight (**$985.19**) are reasonable expenses associated with his assistance on this case.  His total costs are **$1,770.02**.

Exhibit 10 reflects the expenses associated with Stephen Wyse.  Mr. Wyse took

---

[36] *Id.,* 430 n. 4.

[37] "Plaintiff's attorneys, of course, [are] not required to record in great detail how each minute of [their] time was expended.  But at least counsel should identify the general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, supra, 461 U.S. at 437 n. 12.

two necessary depositions of named Defendants (and ultimately witnesses) and paid for a copy of Plaintiff's deposition. Those deposition costs totaled **$1,697.00**. Additionally, Mr. Wyse incurred service of process expenses. These expenses included witness fees and process serving fees. The total process serving costs was **$861.21.** Although not all subpoenaed witnesses were called by Plaintiff, their presence was necessary, as Plaintiff could not make decisions as to rebuttal witnesses until after the trial had begun. In total, Mr. Wyse's reasonable expenses totaled **$2,558.21.**

Exhibit 11 reflects the expenses associated with Hollingshead, Paulus & Eccher ("HP&E"). HP&E reserved hotel rooms in Hannibal, Missouri, for Plaintiff and counsel totaling **$594.88**. Additionally, HP&E incurred process serving expenses. Those expenses were reasonably necessary to prosecute the case at trial. The total process serving costs incurred by HP&E was **$1,000.58**. Thus, HP&E's total expenses were **$1,595.46.** The total expenses incurred by all counsel in this case was **$5,923.69.**

## IV.    CONCLUSION

The foregoing considerations, together with those set forth in the accompanying affidavits and exhibits, warrant that fees be awarded to Plaintiff's counsels in the amount of **$923,900.00**. Additionally, Plaintiff's counsels are entitled to reimbursement for reasonable case expenses in the amount of **$5,923.69** for a total of **$929,823.00.** If Defendant files any further post-trial motions or oppose this fee application, Plaintiffs request leave to submit a supplemental fee and expense application and documentation therefore.

Respectfully submitted,

/s/ Jeremy D. Hollingshead
Jeremy D. Hollingshead   #60447MO
7911 Forsyth Boulevard, Suite 300
Saint Louis, Missouri  63105
Telephone:   (314) 480-5474
Facsimile:   (314) 594-0825
Email:          j.hollingshead@hpelaw.com

/s/ John M. Eccher
John M. Eccher   #62869MO
7911 Forsyth Boulevard, Suite 300
Saint Louis, Missouri  63105
Telephone:   (314) 480-5474
Facsimile:   (314) 594-0825
Email:          j.eccher@hpelaw.com

/s/ Stephen Wyse
Stephen Wyse     #49717MO
609 East Broadway
Columbia, Missouri  65203
Telephone:   (573) 449-7755
Facsimile:   (573) 449-7557

ATTORNEYS FOR PLAINTIFF

**Certificate of Service**

The undersigned counsel hereby certifies that a true and accurate copy of the fore-going, together with exhibits, was sent to all counsels of record this 21st day of October, 2014 via the Court's Electronic Filing System.

/s/ Jeremy D. Hollingshead